IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CONNIE CROUSE, | ) | CASE NO. 1:13 CV 874 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

# Introduction

**A.    Nature of the case and proceedings**

Before me by referral[1] is an action by Connie Crouse under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4] Under my

---

[1] The matter was referred to me under Local Rule 72.2 by United States District Judge John R. Adams by a non-document order dated April 18, 2013.

[2] ECF # 1.

[3] ECF # 11.

[4] ECF # 12.

initial[5] and procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

**B.     Background facts and decision of the Administrative Law Judge ("ALJ")**

Crouse, who was 38 years old at the time of the hearing,[11] has a tenth grade education and was previously certified as a nursing assistant.[12] She has past work experience as a nurse's aide, a home health attendant, a deburrer, and a cashier.[13] She lives with her husband and daughter.[14]

The ALJ, whose decision became the final decision of the Commissioner, found that Crouse had the following severe impairments: fibromyalgia, degenerative joint disease of the

---

[5] ECF # 4.

[6] ECF # 14.

[7] ECF # 24 (Commissioner's brief); ECF # 21 (Crouse's brief).

[8] ECF # 24-1 (Commissioner's charts); ECF # 21-1 (Crouse's charts).

[9] ECF # 20 (Crouse's fact sheet).

[10] ECF # 26.

[11] Transcript ("Tr") at 22.

[12] *Id.* at 39.

[13] *Id.* at 22.

[14] *Id.* at 19.

lumbar spine, spondylolisthesis, chronic obstructive pulmonary disease, depression, attention deficit hyperactivity disorder, panic disorder, and obesity.[15]

After concluding that the relevant impairments did not meet or equal a listing, including Listings 12.04 and 12.06 for mental impairments,[16] the ALJ made the following finding regarding Crouse's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a); consisting of lifting and carrying up to ten pounds, sitting for up to eight hours a day, standing and walking up to two hours a day, with the option to sit and stand every thirty minutes as needed. The claimant is further limited to work that does not involve climbing ladders, ropes, or scaffolds; only occasional stooping, kneeling, crouching, and crawling; no overhead reaching; and no exposure to odors, fumes, dusts, and gases. The claimant is able to perform unskilled work, defined as simple, routine work in a low stress work environment; involving few, if any, changes day to day and little, if any, need to make decisions. The claimant is also to have limited contact with people, defined as brief and superficial contact and no tandem tasks with coworkers.[17]

The ALJ then determined that this residual functional capacity precluded Crouse from performing her past relevant work.[18]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ found

---

[15] *Id.* at 15.

[16] *Id.* at 16-18.

[17] *Id.* at 18.

[18] *Id.* at 22.

that a significant number of unskilled, sedentary jobs exist in the state and national economy that Crouse could perform.[19] The ALJ, therefore, found Crouse not under a disability.[20]

**B.    Issues on judicial review**

Crouse asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Crouse presents the following issue for judicial review:

- Whether the ALJ's evaluation of Crouse's pain is supported by substantial evidence and premised upon appropriate legal standards.[21]

For the reasons that follow, I will recommend that the ALJ's finding of no disability is supported by substantial evidence and, therefore, should be affirmed.

## Analysis

**A.    Standards of review**

*1.    Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled

---

[19] *Id.* at 22-23.

[20] *Id.* at 23.

[21] ECF # 21 at 1.

within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[22]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[23] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[24]

I will review the findings of the ALJ at issue here consistent with that deferential standard. The relevant evidence from the administrative record will be discussed in detail as part of the following analysis.

## *2. Credibility*

In articulating reasons for discounting a claimant's credibility, the ALJ must provide enough of an assessment to assure the reviewing court that he or she has considered the relevant evidence and be specific enough to permit the court to trace the path of the ALJ's

---

[22] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[23] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[24] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

reasoning.[25] The ALJ's credibility finding is entitled to deference and should not be disturbed absent compelling reasons.[26]

**B.     Application of standards**

As was recognized by both parties, this case presents the fairly narrow single question of whether the ALJ properly analyzed Crouse's complaints of pain and then correctly articulated the resulting decision to discount those complaints.

The ALJ's analysis of Crouse's complaints of pain is not contained in a single discussion but is presented in various places throughout the opinion. Thus, there is not a single, unified statement as to why the ALJ discounted her credibility in this regard. However, while such a highly focused analysis might be preferable, it is not required. Rather, when specific reasons for discounting credibility, supported by evidence in the record, are present within the text of the opinion, and not supplied later as a *post hoc* rationalization by the Commissioner's counsel, the articulation will be deemed sufficient.[27]

Further, I also observe that evaluation of a claimant's pain starts with an inquiry into the objective medical evidence. "Where the objective medical evidence does not support a finding of disability, at least an informal presumption of 'no disability' arises that must be overcome by such other evidence as the claimant might offer to support his claim."[28] That

---

[25] *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005).

[26] *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

[27] *See*, *Cross*, 373 F. Supp. 2d at 732-33 (citations omitted).

[28] *Id.* at 732.

other evidence includes the claimant's daily activities; the location, duration, frequency, and intensity of the pain; precipitating and aggravating factors; the type, dosage effectiveness, and side effects of medication; and treatment or measures, other than medication, taken to pain.[29]

When a claimant presents credible evidence of these factors, "such proof may justify the imposition of work-related limitations beyond those dictated by the medical evidence."[30] But, "[t]he discretion afforded by the courts to the ALJ's evaluation of such evidence is extremely broad."[31]

Here, the ALJ found that Crouse's complaints of pain were only partially credible. As the Commissioner notes, the ALJ's opinion in addressing the objective medical evidence specifically found that:

1. Crouse's obesity had improved;

2. she went for some period of time between a pain injection in 2008 and a report of serious pain in 2009;

3. findings of 2008 and 2009 scans and/or x-rays of her shoulder joints, knee joints, knee, spine and bone did show various levels of changes, but no complaints of serious pain until October, 2009;

4. Crouse received conservative treatment (medication) for that 2009 pain complaint;

---

[29] *Id.* (citation omitted).

[30] *Id.*

[31] *Id.*

    5.      a March 2010 complaint of arm and shoulder pain resulted in nothing more than pain medication;

    6.      an April 2010 treatment note that Crouse experienced pain while "out walking" was contrasted with her own reports that she spends her days in bed;

    7.      a January 2011 complaint that her shoulder "felt out of place" produced – again – only the conservative treatment of pain medication; and

    8.      although Crouse reported pain in her chest from COPD, the pain was due to her having run out of her medication.[32]

While seemingly a fairly comprehensive evaluation, Crouse contends that this analysis is fatally incomplete. In particular, she argues that the ALJ failed to accord significant weight to opinions from three treating physicians "which all note chronic, severe, intractable and functionally limiting pain."[33] Further, she argues that the ALJ failed to consider the impact of her mental disorder on her pain.[34]

As to the three treating physicians, I observe that only the most recent treating source, Bruce Grund, M.D., is mentioned by the ALJ in the decision.[35] The ALJ concluded that Dr. Grund's opinion – that Crouse is disabled from work due to chronic back pain, fibromyalgia, anxiety/depression, and COPD[36] – is entitled to "no weight" because Dr. Grund

---

[32] Tr. at 19-20.

[33] ECF # 21 at 17.

[34] *Id.*

[35] Tr. at 21.

[36] *Id.* at 896.

-8-

had only seen Crouse a "few times" prior to preparing the report, and his treatment notes do not indicate how he "could have come to this conclusion."[37]

Young Kang, M.D., one of the other treating sources, treated Crouse from 2005 to 2007. While Dr. Kang, an internist, did not submit an opinion as to Crouse's functional limitations, Dr. Kang's notes show Crouse made multiple complaints of pain,[38] such that Dr. Kang in 2006 diagnosed low back pain, left hip pain, and neck pain.[39] He later noted that she appeared to have an "acute exacerbation" of the low back pain in 2007.[40]

Theodore Togliotti, M.D., a pain management specialist, also did not present an opinion as to any specific functional limitations, but his detailed records, including observations from his own examinations of Crouse, warrant a closer look. The record shows Dr. Togliotti treating Crouse approximately ten times over the one-year period of September 2007 to September 2008. In addition to noting Crouse's subjective complaints of pain during an early visit, Dr. Togliotti also recorded in the "objective" section of his October 4, 2007, notes that Crouse displayed "tenderness to palpation over lumbar paraspinous muscles and facet joints," and that there was "[i]ncreased pain with lumbar extension."[41] Dr. Togliotti's treatment plan stated that "[g]iven her facet joint arthropathy seen in clinical exam and on

---

[37] *Id.* at 21.

[38] *See*, *id.* at 315, 316, 320.

[39] *Id.* at 348.

[40] *Id.* at 412.

[41] *Id.* at 477.

MRI" Crouse was to receive injections over the coming weeks, in addition to a prescription for Percocet.[42]

Dr. Togliotti's records show that these injections succeeded in relieving Crouse's pain.[43] Additional injections were done in April 2008 and July 2008.[44] In August 2008 Crouse told Dr. Togliotti that she "continues to get good relief" with the injections such that her lower back pain "has gotten much better and she is better able to tolerate standing and activity as well as bending."[45] Dr. Togliotti also stated in his examination notes that the tenderness he had previously observed on palpation over the lumbar muscles was now "mild," and similarly that the pain he previously noted on lumbar extension was also now "mild."[46]

However, by the next visit on September 10, 2008, Crouse was reporting that her pain symptoms have become worse since the August visit, with a sensation "as if bone rubbing bone" in her lower back.[47] Yet, in the follow-up visit two weeks later, Crouse stated that,

---

[42] *Id.*

[43] *Id.* at 480. Crouse reported to Dr. Togliotti that "the use of medications continue to provide effective relief of pain and symptoms, improved functions and activity levels without evidence of SE, abuse/addiction or diversion."

[44] *Id.* at 489, 490.

[45] *Id.* at 542.

[46] *Id.*

[47] *Id.* at 540.

while she was still experiencing pain in her lower middle back, her bilateral spine pain had improved such that she was "more flexible and active" as a result.[48]

Thus, because Dr. Togliotti – like Dr. Kang – supplied no opinion as to any functional limitations that requires review under the treating physician rule, the fact that the ALJ did not attempt such a review is not error in that regard.[49] In addition, although the ALJ technically did not conform to the good reasons requirement of the treating source rule in assigning Dr. Grund's opinion "no weight," the ALJ did meet one of the harmless error exceptions to the rule by providing two clearly stated good reasons for not crediting that opinion which are capable of meaningful judicial review.[50]

That said, Dr. Togliotti's notes now only bear on whether the ALJ's decision to discount Crouse's credibility as to pain is supportable under the rubric previously outlined, with its significant emphasis on the wide discretion afforded to the ALJ. In that regard, those notes provide evidence for both a clinical basis for Crouse's pain and for the fact that the pain is capable of significant reduction with appropriate therapy. As such, they do not establish grounds for reversing the ALJ's finding in this regard.

---

[48] *Id.* at 539.

[49] *Winter v. Comm'r of Soc. Sec.*, No. 12-11962, 2013 WL 4604782, at *9 (E.D. Mich. Aug. 29, 2013) (despite the fact that the treatment notes of a treating source appear in the record, and that those notes contain a diagnosis, when they do not contain an opinion as to what the claimant can do in view of the diagnosis, there is no treating source opinion which must be discussed and to which the ALJ must defer).

[50] *See*, *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011) (breach of treating source rule is harmless when, *inter alia*, the goal of the rule is satisfied – good reasons given that permit meaningful judicial review).

## Conclusion

Substantial evidence supports the finding of the Commissioner that Crouse had no disability. Accordingly, I recommend that the decision of the Commissioner denying Crouse disability insurance benefits and supplemental security income be affirmed.

Dated: March 25, 2014                                    s/ William H. Baughman, Jr.
                                                         United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[51]

---

[51] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).